UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LUCRETIA STARGELL, | ) |
| Plaintiff | ) ) ) |
| v. | ) 2:24-cv-00135-JAW ) |
| CENTRAL MAINE HEALTH CARE, | ) ) |
| Defendant | ) |

**ORDER ON MOTION TO AMEND
AND TO EXTEND SCHEDULING ORDER DEADLINE**

Plaintiff seeks to amend her complaint to correct some typographical errors and to add a party. (Motion to Amend, ECF No. 16.) Relatedly, Plaintiff asks the Court to extend the deadline for the amendment of the pleadings and joinder of parties. Defendant Central Maine Healthcare[1] opposes Plaintiff's motion. (Response, ECF No. 17.) Following a review of the record and after consideration of the parties' arguments, the Court grants Plaintiff's motion to amend and dismisses as moot Plaintiff's motion to extend the scheduling order deadline for the joinder of parties and amendment of pleadings.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff alleges Defendant hired her on February 28, 2023, to serve as President of Bridgton and Rumford Hospitals. (Proposed Amended Complaint ¶ 7, ECF No. 16-1.) When Defendant offered Plaintiff the position, Defendant knew Plaintiff was living in

---

[1] In the complaint, Plaintiff identifies the defendant as Central Maine Health Care. Through her proposed amendment, Plaintiff seeks to correct the defendant's name to Central Maine Healthcare.

[2] The following facts are derived from Plaintiff's proposed amended complaint and Plaintiff's motion.

North Carolina and had two teenage children, one of whom was in high school. (*Id.* ¶ 10.) Although Plaintiff's employment contract did not contain a residency requirement, Plaintiff planned to move her family from North Carolina to Maine, though her child in high school would finish the school year in North Carolina. (*Id.*) Plaintiff began working in Maine in March 2023 and began to transition her family to Maine. (*Id.* ¶ 11.) In May 2023, Plaintiff had a conversation with Steven Littleson, the President and Chief Executive Officer of Central Maine Healthcare, during which Dr. Littleson[3] suggested that Plaintiff's employment would be in jeopardy if her younger child remained in school in North Carolina.[4] (*Id.* ¶ 14.) According to Plaintiff, Dr. Littleson stated that Plaintiff's performance in the job was "awesome" and Defendant's concerns were unrelated to her performance. (*Id.*)

At a May 3, 2023, meeting with hospital administrators, Plaintiff was told Defendant was accepting her resignation, even though Plaintiff had not offered her resignation. (*Id.* ¶ 15.) Plaintiff declined to sign the documents provided by Defendant reflecting that she was resigning and granting her three months' severance instead of the one year of severance required by her contract. (*Id.* ¶ 16.) Plaintiff's employment was subsequently terminated. (*Id.*)

---

[3] In its opposition to the motion to amend, Defendant references Stephen Littleson as Dr. Littleson. In this order, the Court adopts the prefix used by Defendant.

[4] Plaintiff alleges that Dr. Littleson made statements such as "you can't be a mother and be president of hospitals," "you can't be a mother and be going home to visit your daughter," "you can't have a child in school in North Carolina and do this job," "if your child doesn't go to school in Maine then you don't have a job," and "if you think you can be President of the hospitals and have a child going to school in North Carolina then you are wrong." (*Id.* ¶ 14.)

Plaintiff alleges that on or about June 8, 2023, Defendant published false and defamatory statements about Plaintiff in the Bridgton News, which is evidently a local news publication. (*Id.* ¶ 23.) Defendant's representative was quoted as saying that "she (Plaintiff) was not able to commit to being here full-time. We need someone who can commit to be here full-time." (*Id.*) Plaintiff further alleges that Dr. Littleson made false and defamatory statements in emails to the hospital Board of Directors and a member of the business community who has a leadership role in health care. (*Id.* ¶ 24.) According to Plaintiff, Dr. Littleson stated that Plaintiff "backed out" of her commitments, that she could not keep up with her job commitments while having school age children in North Carolina, that she did not "voluntarily disclose" certain information, and that she had resigned. (*Id.*)

Following the termination of her employment, Plaintiff filed a complaint with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. (*Id.* ¶ 22.) She received a right to sue letter on January 23, 2024. Plaintiff filed her complaint in this Court on April 22, 2024. (*Id.*) In the original complaint, Plaintiff sought damages against Defendant based on claims of gender and familial discrimination under the Maine Human Rights Act, gender discrimination under 42 U.S.C. § 2000e, breach of contract, violations of the Maine Unpaid Wages Statute, and defamation. (Complaint ¶¶ 26–68, ECF No. 1.)

## DISCUSSION

Federal Rule of Civil Procedure 15(a)(1) permits a litigant to amend a pleading "as a matter of course" subject to certain time constraints. When a party seeks to amend a

complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; see also *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

The standard is elevated when the motion to amend is filed after the court's scheduling order deadline for amendment of pleadings. A motion to amend that is filed beyond the deadline established in a scheduling order requires an amendment of the scheduling order. To obtain an amendment of the scheduling order, a party must demonstrate good cause. *Johnson v. Spencer Press of Maine, Inc.*, 211 F.R.D. 27, 30 (D. Me. 2002); *El–Hajj v. Fortis Benefits Ins. Co.*, 156 F. Supp. 2d 27, 34 (D. Me. 2001); Fed. R. Civ. P. 16(b)(4).

A court's decision on good cause "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Id.* (quoting *Acosta–Mestre v. Hilton Int'l of P.R., Inc.*, 156

4

F.3d 49, 52 (1st Cir. 1998)).  Ultimately, it falls to the court's discretion whether to grant a motion to amend, and that discretion should be exercised based on the particular facts and circumstances of the case.  *Id.*

The Scheduling Order in this case designated October 9, 2024, as the deadline for the amendment of the pleadings and the joinder of parties.  (Amended Scheduling Order, ECF No. 11.)  Because Plaintiff filed her motion after October 9, she must demonstrate good cause for the amendment.

A. **Good Cause**

"[T]he primary focus of the good cause standard is the moving party's diligence in trying to abide by the deadlines established in the scheduling order.  Relevant to that analysis is what 'the plaintiff knew or should have known' and what [she] 'did or should have done.'"  *Punsky v. City of Portland*, No. 2:19-cv-00235-NT, 2020 WL 7249350, at *4 (D. Me. Dec. 9, 2020); *C&M Prop. Mgmt. LLC v. Moark LLC*, No. 2:15-cv-00336-GZS, 2016 WL 7480271, at *3 (D. Me. Dec. 29, 2016) ("Factual allegations that were within the plaintiff's knowledge at the time the action was initiated cannot serve to meet the 'good cause' standard.").

Plaintiff seeks to amend her complaint to add Dr. Littleson as a defendant on a defamation claim.[5]  Plaintiff contends that the principal basis for the defamation claim against Dr. Littleson was revealed in documents that Defendant produced on January 31,

---

[5] Plaintiff's request to amend the complaint to correct some typographical errors does not appear to be contested.

2025, which documents were included in a production that consisted of more than 500 pages of emails and other documents. The emails that Dr. Littleson sent to the hospital's Board of Directors and another individual were among the documents produced. Plaintiff filed the motion to amend on February 24, 2025, seven weeks before the expiration of the discovery deadline.

Defendant argues Plaintiff knew or should have known that Dr. Littleson was a potential defendant well before the October 9 deadline for the amendment of pleadings. In support of its argument, Defendant cites an email that Plaintiff produced in which Dr. Littleson disclosed the name of the interim president of Rumford and Bridgton Hospitals following Plaintiff's "resignation." Defendant also argues that when Plaintiff commenced this action, she knew of Dr. Littleson's alleged comments regarding Plaintiff's ability to perform her job while her children lived in North Carolina. Plaintiff contends that although the press release and announcement were "false and defamatory," they "did not, and could not, put [Plaintiff] on notice that the facts would support the requisite level of intent on the part of Littleson. Nor could they put [Plaintiff] on notice as to the explicit and implicit false and disparaging statements being spread by Littleson." (Plaintiff's Reply Memorandum at 3, ECF No. 18.)

Although a corporate officer could be personally liable for the tort of the corporation if the tort was committed at the officer's direction, *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 163 (1st Cir. 2001), the current record does not definitively establish that Plaintiff knew or should have known that Dr. Littleson was involved in drafting the press

6

release and announcement.[6]  Even if Plaintiff knew that Dr. Littleson participated in the preparation of the press release, according to Plaintiff, she was not aware of the emails, which can reasonably be viewed as evidence that might alter Plaintiff's assessment of the merit of a potential claim against Dr. Littleson.  In short, the Court is not persuaded that Plaintiff lacked diligence in seeking the amendment twenty-four days after receipt of new information and seven weeks before the discovery period expires.

Defendant's prejudice argument, while not without merit, also does not persuade the Court that the denial of Plaintiff's motion is warranted.  Defendant argues that the joinder of a party would necessarily increase the time and cost necessary to conclude the case.  Although the addition of Dr. Littleson as a party would likely generate the need for some additional discovery and thus extend the time to resolution, given the relatively limited facts that would be relevant to the claim against Dr. Littleson and given that Plaintiff alleged a defamation claim in the original complaint, the time for discovery would not be unreasonable and the claim would not necessitate a "major alteration in trial tactics and strategy" for Defendant.[7]  *Steir*, 383 F.3d at 12.  The Court, therefore, finds that any

---

[6] Defendant argues Plaintiff should have known of Dr. Littleson's involvement because she alleged in her complaint that after her termination, she learned that Defendant "falsely reported to her teams and colleagues that she had resigned her position." (Defendant's Response to Motion at 4, ECF No. 17.) That fact, however, does not establish that Plaintiff was aware of all Dr. Littleson's statements or the extent of his involvement in Defendant's communications regarding the end of Plaintiff's employment.  Further, to the extent Defendant argues Plaintiff should have known of a potential defamation claim against Dr. Littleson based on his statements to her about her ability to perform the job given her parental responsibilities, the statements made to her were not "published" to a third party and therefore could not be the basis for a defamation claim. *See Gary v. Stanford Mgmt., LLC,* 2024 ME 46, ¶ 8, 319 A.3d 1022.

[7] Although Defendant states it has been "refining its defense strategy" since Plaintiff filed a complaint with the MHRC and EEOC over two years ago (Defendant's Response to Motion at 7), Defendant does not describe a strategy that Defendant would have to alter materially if the amendment is allowed.

7

potential prejudice the amendment might cause Defendant is insufficient to preclude the amendment.

### B. Futility

Defendant argues that the Court should deny Plaintiff's motion because the amendment would be futile. A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton*, 987 F.2d 855, 868 (1st Cir. 1993). When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Defendant argues that Plaintiff's proposed defamation claim fails because (1) Dr. Littleson's characterization of Plaintiff's firing as a resignation is not defamatory, (2) Dr. Littleson's statements that Plaintiff "could not keep her commitments to her job while having school age children in North Carolina" is true and therefore not defamatory, and (3) Dr. Littleson's communications with the Board are privileged.

To prove defamation under Maine law, a plaintiff must prove:

> (1) A false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; [and] (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Gary v. Stanford Mgmt., LLC*, 2024 ME 46, ¶ 8, 319 A.3d 1022 (quoting *Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 10, 222 A.3d 1063). "A communication is defamatory 'if it tends so to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with him.'" *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (quoting Restatement (Second) of Torts § 559 (1977)). A statement is false only if it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991).

Although a fact finder might ultimately determine that the statements are non-defamatory, a reasonable person could conclude that the statements falsely characterized the circumstances of the end of Plaintiff's employment and her ability to perform the job in a way that caused harm to Plaintiff's reputation.[8] *See McCullough v. Visiting Serv. of S. Me., Inc.*, 1997 ME 55, ¶ 10, 691 A.2d 1201 (analyzing statements for defamation based on a reasonable person). Furthermore, Defendant's contention that Dr. Littleson's

---

[8] Defendant argues in part that some of the statements Plaintiff cites in support of her defamation claim are too vague to constitute defamation. "In assessing whether a statement [is defamatory], 'the statement must be interpreted in its context, which includes the entire publication and all extrinsic circumstances known to the recipient.'" *Franchini v. Bangor Publ'g Co.*, 383 F. Supp. 3d 50, 60 (D. Me. 2019) (quoting *Schoff v. York Cnty.*, 761 A.2d 869, 871 n.3 (Me. 2000)). Because the Court must accept the allegations as true and draw all reasonable inferences therefrom when assessing a motion to dismiss, in the context of all the statements that Plaintiff attributes to Dr. Littleson, the statements could be viewed as defamatory.

comments regarding Plaintiff's ability to balance her family responsibilities with work constitutes an opinion that is not actionable does not preclude the amendment. The statement can reasonably be interpreted as a factual statement. "'[I]f the average reader could reasonably understand the statement as either fact or opinion, the question of which it is will be submitted to the fact-finder.'" *Ballard v. Wagner et al.*, 2005 ME 86, ¶ 11, 877 A.2d 1083 (quoting *Caron v. Bangor Pub'lg Co.*, 470 A.2d 782, 784 (Me. 1984)).

      Defendant's privilege argument also does not render the amendment futile. "Maine has recognized a conditional privilege for statements within an employment relationship, such as reviewing another employee's qualifications. . . . [L]iability exists 'only if the person who made the defamatory statements loses privilege through abusing it.'" *Gavrilovic v. Worldwide Language Res.*, 441 F. Supp. 2d 163, 183 (D. Me. 2006) (quoting *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)). "The determination of whether such a privilege exists is based on the totality of circumstances, looking at the 'interests of the publisher and the recipient.'" *Morgan v. Kooistra et al.*, 2008 ME 26, ¶ 32, 941 A.2d 447 (quoting *Rice v. Alley*, 2002 ME 43, ¶ 22, 791 A.2d 932). Whether a privilege applies to the statements Dr. Littleson made to the Board of Directors requires a more developed record. Plaintiff also alleges that Dr. Littleson made the statements to a non-board member, which would suggest that even if a privilege applied to the statements made to the Board, Plaintiff would not be entirely foreclosed from prevailing on a defamation claim based on the statements.

In sum, because a reasonable person could interpret Dr. Littleson's statements to be defamatory, the proposed amendment would not be futile.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Plaintiff has established good cause for the filing of the amendment and that the amendment would not be futile. The Court, therefore, grants Plaintiff's motion to amend the complaint. Plaintiff shall file the amended complaint within seven days of the date of this order.

In addition, because Plaintiff demonstrated good cause for the amendment, an amendment of the scheduling order to extend the deadline to amend the pleadings and join parties is not necessary. The Court, therefore, dismisses as moot Plaintiff's request to amend the scheduling order.[9]

## **NOTICE**

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of May, 2025.

---

[9] As the Court noted in its recent order on a separate motion to amend the scheduling order (Order, ECF No. 20) when Mr. Littleson is joined as a defendant, the Court will issue a new scheduling order.